Peter NEASE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8560.

Court of Appeals of Alaska.

Jan. 28, 2005.

Rehearing Denied Feb. 24, 2005.

---

Eric Hedland, Assistant Public Defender, Juneau, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

A Juneau police officer stopped Peter Nease after he observed that the passenger-side brake light on Nease's pickup truck did not light up when he stopped at a traffic light.[1] When the officer contacted Nease, he observed signs that Nease was driving while intoxicated, and ultimately arrested Nease for that offense.[2] Nease argues that the evidence of his intoxication should have been suppressed because the police officer used his malfunctioning brake light as a pretext to stop him for driving while intoxicated. For the reasons below, we reject this claim and affirm Nease's conviction.

### Facts and proceedings

While on patrol early on the morning of February 3, 2002, Juneau Police Officer Matt Torok saw Nease having a drink at Marlintini's bar. Officer Torok recognized Nease and his red pickup truck from an incident several days earlier. During that earlier incident, Officer Torok had observed Nease speeding 75 miles per hour in snowy conditions. But by the time Officer Torok caught up with Nease, Nease was no longer in his truck and denied that he had been driving. Nease "could barely walk" and "reeked of alcohol." Officer Torok suspected that he had been driving while intoxicated. But Officer Torok did not arrest Nease because he could not identify him as the driver. Officer Torok told Nease that "the next time he drove drunk ... [he] was going to get him."

After seeing Nease at Marlintini's bar on February 3, Officer Torok continued his patrol. About an hour later, Officer Torok spotted Nease's truck parked at the nearby Valley Restaurant. By the time Officer Torok turned his patrol car around, Nease was pulling his truck out of the restaurant parking lot and onto the Glacier Highway. Officer Torok followed Nease, observing no problems with his driving. But when Nease stopped at a traffic light, Officer Torok saw

---

1. 13 Alaska Administrative Code (AAC) 04.035(c) provides in relevant part that rear brake lights "must be illuminated by application of the service or foot brake."

2. AS 28.35.030(a).

that one of his brake lights was not working. Officer Torok activated his emergency lights and pulled Nease over. After determining that Nease was intoxicated, Officer Torok arrested him for driving while intoxicated.

Nease filed a motion to suppress the evidence seized as a result of this stop. He argued that the stop was illegal because his alleged broken brake light was a pretext to investigate him for drunk driving. After an evidentiary hearing, District Court Judge Peter B. Froehlich granted Nease's motion and suppressed the evidence. Judge Froehlich found that, but for the incident several days earlier, Officer Torok would not have stopped Nease for the broken brake light.

The State filed a petition for review in superior court, arguing that the district court had applied the wrong standard in assessing the legality of Nease's stop. The State argued that an officer's subjective intent for a traffic stop is irrelevant to the assessment of whether that traffic stop was justified. Superior Court Judge Larry R. Weeks agreed and remanded the case. Judge Weeks, quoting *Beauvois v. State*,[3] directed the district court to determine "whether, under the facts known to the police officer, the stop of the car was *objectively* justified."[4]

The parties presented no additional evidence on remand. After hearing argument, Judge Froehlich found that Officer Torok did not have reasonable suspicion to stop Nease, and he reaffirmed his order granting Nease's motion to suppress. Judge Froehlich recalled that Officer Torok had testified that Nease's brake light might have been "alternating" or "flickering." He concluded that this testimony had not established a "clear [traffic] infraction," and that the State had thus not "met its burden of showing by a

preponderance of the evidence that there was any reason for stopping Mr. Nease other than to check him to see if he was driving under the influence of alcohol."

The State again petitioned for review, arguing that Judge Froehlich had again erred in considering the subjective intent of the officer in assessing the legality of the stop. The State also argued that Judge Froehlich had clearly erred in finding that there was too little evidence of a brake light malfunction to justify the traffic stop. Judge Weeks reversed the district court a second time, and ordered that the matter be set for trial. Nease then entered a *Cooksey* plea in district court, preserving his right to appeal the denial of his motion to suppress.[5]

*Why we conclude that Nease's stop was not an illegal pretext stop*

■ Nease asks us to uphold the district court's factual finding that there was too little evidence of a broken brake light to justify his stop. He also asks us to affirm the district court's ruling that his stop was a pretext to investigate him for drunk driving.

■ Judge Froehlich concluded that Officer Torok did not have reasonable suspicion to stop Nease for a broken brake light. But normally an officer who directly observes a violation of the traffic code has probable cause for a traffic stop.[6] Probable cause is therefore the appropriate standard to apply in evaluating the stop in this case.

■ Whether probable cause for a traffic stop exists is a mixed question of fact and law.[7] We view the evidence in the light most favorable to the district court's ruling,[8] overturning its factual findings only if they are

3. 837 P.2d 1118 (Alaska App.1992).

4. *Id.* at 1121–22 n. 1 (emphasis added).

5. *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974).

6. *See, e.g., Williams v. State*, 853 P.2d 537, 538 (Alaska App.1993) (police had probable cause to make a traffic stop because the evidence, viewed in the light most favorable to the district court's

ruling, established that the driver's taillight was emitting at least some white light in violation of 13 AAC 04.145(e)).

7. *See Chandler v. State*, 830 P.2d 789, 792 (Alaska App.1992).

8. *State v. Wagar*, 79 P.3d 644, 650 (Alaska 2003).

clearly erroneous.[9] Whether those facts justify a finding of probable cause is an issue subject to *de novo* review.[10]

The State argues that the district court clearly erred in finding on remand that the State had not met its burden of showing that Officer Torok had observed a traffic violation. We agree. Officer Torok testified that he was driving directly behind Nease when he saw that the passenger side brake light on Nease's pickup truck "did not light up" when Nease stopped at the light. Nease offered no evidence to contradict this testimony and, *immediately after hearing* this testimony, Judge Froehlich concluded that the facts of the stop were undisputed. Some two months later, when the case was on remand from the superior court, Judge Froehlich's memory had apparently faded; he found that there had been no "clear [traffic] infraction"—that Nease's brake light may have been "alternating" or "flickering." There is no evidence to support a finding that Nease's brake light "alternated" or "flickered"—Officer Torok's uncontradicted testimony was that the brake light "did not light up." Because 13 AAC 04.035(c) requires rear brake lights to "be illuminated by application of the service or foot brake," this observation gave Officer Torok probable cause to stop Nease for violating the traffic code.

■ Nease argues that his stop was nevertheless illegal because Officer Torok's real reason for stopping him was not the broken brake light but his suspicions that Nease might be driving while intoxicated. Nease argues that the Alaska Constitution forbids the police from using a traffic infraction as a pretext to stop a motorist for an offense for which the police do not have enough individualized suspicion to justify a stop. Nease

acknowledges that under the United States Supreme Court's decision in *Whren v. United States*,[11] Officer Torok's motivations for the stop are irrelevant—under *Whren*, a traffic stop comports with the Fourth Amendment as long as all the circumstances, viewed objectively, give the police probable cause for the stop.[12] But *Nease* argues that we should reject *Whren* as a matter of state law and adopt a subjective test similar to that employed by the Washington Supreme Court in *State v. Ladson*.[13]

In *Ladson*, the Washington high court held that a traffic infraction may not be used as a pretext for a search, or even as a pretext "to stop to investigate for a sufficient reason to search even further."[14] To determine if a stop is pretextual under this standard, Washington courts look at the totality of the circumstances, "including both the subjective intent of the officer as well as the objective reasonableness of the officer's behavior."[15]

We conclude that it is unnecessary in this case to decide whether to adopt *Whren* or, conversely, to adopt *Ladson* as a matter of state law. We reach this conclusion because Nease failed to allege sufficient facts to bring the traffic stop within the doctrine of pretext stops.

■ As Professor LaFave explains in his work on search and seizure,[16] the fact that a police officer may have an ulterior motive for enforcing the law is irrelevant for Fourth Amendment purposes—even under the doctrine of pretext searches—unless the defendant proves that this ulterior motive prompted the officer to depart from reasonable police practices:

[The officers'] underlying intent or motivation ... does not require suppression [if]

9. *Chandler*, 830 P.2d at 792.

10. *Id.*

11. 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

12. *Id.* at 809–19, 116 S.Ct. at 1772–77.

13. 138 Wash.2d 343, 979 P.2d 833 (1999).

14. *Id.* at 840.

15. *Id.* at 843.

16. Wayne R. LaFave, 1 *Search and Seizure: A Treatise on the Fourth Amendment* § 1.4, at 115–25 (3rd ed.1996).

the Fourth Amendment activity undertaken [by the officers] is precisely the same as would have occurred had that intent or motivation been entirely absent.... This means, for example, that if the police arrest [a defendant] for crime A, as they would have in any event, in the anticipation or hope of thereby finding evidence of crime B on [the defendant's] person, [this] underlying intent or motivation does not make their action illegal. Likewise, if the police stop [a motorist's] car for minor offense A, and they subjectively hoped to discover contraband during the stop so as to establish serious offense B, the stop is nonetheless lawful if a reasonable officer would have made the stop in the absence of the [ulterior] purpose.[17]

We assume for purposes of argument that Officer Torok decided to follow Nease's vehicle because he suspected that Nease might be intoxicated (based on the prior incident involving Nease, and based on the time of day and the fact that Officer Torok had observed Nease drinking in a bar just a short time before). But Officer Torok's decision to follow Nease's vehicle did not infringe Nease's Fourth Amendment rights.

While Officer Torok was following Nease's vehicle, he observed that Nease had a nonfunctioning brake light. Officer Torok pulled Nease over to cite him for this traffic offense—a stop that was supported by probable cause. Even if we were to subscribe to the doctrine of "pretext stops," the question would be whether Nease proved that Officer Torok departed from reasonable police practice when he decided to stop Nease because of the non-functioning brake light.

There are numerous factors that a police officer may properly consider when deciding whether to stop a motorist for a traffic violation, including the egregiousness or seriousness of the violation (i.e., whether it poses a danger to safety), any earlier police contacts with the motorist or the vehicle, the time of day or night, the weather and road conditions, and the press of other business (or lack thereof).

Here, Officer Torok had observed Nease drinking in a bar earlier that morning. Officer Torok might thus surmise, both from his prior contact with Nease and from his observations of Nease earlier that morning, that Nease was intoxicated. This suggests that Officer Torok had an additional reason for wanting to stop Nease's vehicle. But as explained in the quoted passage from Professor LaFave, this additional motivation is irrelevant in the absence of proof that Officer Torok's decision to stop Nease and issue him a citation represented a departure from reasonable police practice, given the circumstances of this case.

In the present case, Judge Froelich concluded that Officer Torok stopped Nease's vehicle primarily because the officer wished to investigate the possibility that Nease was driving while intoxicated. At one point in the judge's remarks, he indicated that this conclusion was based on the finding that Officer Torok had no good reason to believe that Nease's brake light was broken. As we have explained, this finding was clearly erroneous: the record shows that Officer Torok personally observed (and thus had probable cause to believe) that Nease's brake light was not working properly.

Judge Froelich's ruling also appears to have been based on a conclusion about Officer Torok's subjective state of mind: that the traffic stop should be invalidated because Officer Torok's primary subjective motivation for making the stop was to investigate his suspicion that Nease was driving while intoxicated. But as we have explained, even under the "pretext" doctrine, the precise issue is not Officer Torok's subjective motivation for making the stop. Rather, the question is whether Officer Torok departed from reasonable police practice when, having probable cause to stop Nease because of the broken brake light, he in fact stopped Nease.

Nease presented no evidence to suggest that police officers never stop motorists to issue citations for equipment violations, or that they would never do so under the cir-

17. *Id.* at 117–18.

cumstances of this case. Moreover, Nease has never asserted (much less shown) that Officer Torok manipulated the traffic stop in this case by abnormally expanding or extending his contact with Nease so that he could investigate Nease's potential drunk driving.

There is no evidence that Officer Torok's contact with Nease exceeded the normal duration or scope of a traffic stop for an equipment violation. As far as we can tell from this record, it was immediately apparent to Officer Torok, when he contacted Nease during the traffic stop, that Nease might be impaired. And because Officer Torok's initial contact with Nease gave him reasonable suspicion to believe that Nease was driving while under the influence, Officer Torok could properly ask Nease to perform field sobriety tests.

In sum, Officer Torok had probable cause to stop Nease for the equipment violation, and Nease failed to present evidence that no reasonable police officer would have conducted a traffic stop under these circumstances. Any finding to the contrary would be clearly erroneous on this record. Accordingly, even if we adhered to the doctrine of pretext stops and searches, Nease would not be entitled to suppression of the evidence against him.

## Conclusion

The superior court's decisions were correct, and Nease's conviction is AFFIRMED.