**Gary L. GROHS, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–8753.

Court of Appeals of Alaska.

Aug. 12, 2005.

Marcia E. Holland, Assistant Public Defender, Fairbanks, and Barbara K. Brink, Public Defender, Anchorage, for the Appellant.

Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Gary L. Grohs was stopped for not having an illuminated rear license plate.[1] Based on the state trooper's observations during this traffic stop, Grohs was arrested for driving under the influence. Grohs then refused to submit to a breath test. Based on this episode, and based on Grohs's prior convictions for driving while intoxicated, Grohs was indicted for felony driving under the influence and felony breath test refusal.[2]

Following his indictment, Grohs asked the superior court to dismiss the charges. Grohs contended that the traffic stop had been pretextual, and that all of the government's evidence should therefore be suppressed. When the superior court denied the motion to dismiss, Grohs entered a *Cooksey* plea to the felony breath test refusal charge, preserving his right to litigate the claim of pretext stop on appeal.[3] The State, for its part,

---

1. 13 AAC 04.025(c): "Either a taillight or a separate light must illuminate, with a white light, the rear registration plate, so that it is clearly visible from a distance of 50 feet to the rear [of the vehicle]. The light must be wired so as to be illuminated when the headlights or auxiliary driving lights are illuminated."

2. AS 28.35.030(n) and AS 28.35.032(p), respectively.

3. *See Cooksey v. State,* 524 P.2d 1251, 1255–57 (Alaska 1974).

dismissed the felony DUI charge (as well as a related misdemeanor charge of driving with a suspended license).

Felony breath test refusal is a class C felony,[4] and Grohs was a second felony offender. (He had a prior conviction for felony driving under the influence.) Under Alaska's sentencing law at that time, Grohs faced a presumptive term of 2 years' imprisonment.[5]

The State proposed one aggravating factor: AS 12.55.155(c)(21)—that Grohs had a history of repeated instances of criminal conduct similar in nature to his present offense. To prove this aggravating factor, the State relied on the fact that Grohs had six prior convictions for driving while intoxicated (the one prior felony, plus five earlier misdemeanor convictions). At the sentencing hearing, Grohs's attorney conceded that this aggravator was proved.

The presence of this aggravating factor authorized the superior court to exceed the 2–year presumptive term and consider any sentence up to the 5–year maximum term for a class C felony.[6] Based on the aggravator, the superior court sentenced Grohs to 4 years' imprisonment with 1½ years suspended (i.e., 2½ years to serve).

While Grohs's case was on appeal, the United States Supreme Court decided *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In *Blakely*, the Supreme Court held that a defendant has a right to a jury trial (under the Sixth Amendment to the United States Constitution) with regard to any disputed factual issue, other than a prior conviction, which increases the defendant's maximum sentence.[7] Grohs argues that the superior court violated *Blakely* in his case by increasing his sentence above the 2–year presumptive term, based on aggravator (c)(21), without offering him a jury trial on this aggravator.

Based on the analysis in our recent decision in *Nease v. State*, 105 P.3d 1145 (Alaska App.2005), we conclude that Grohs failed to establish that his traffic stop was pretextual.

And with regard to the *Blakely* issue, we conclude that Grohs has failed to show plain error (for reasons that we explain in detail below). We therefore affirm Grohs's conviction and his sentence.

*The claim that the traffic stop was pretextual*

Grohs contends that, even though his rear license plate may not have been illuminated as required by 13 AAC 04.025(c), the state trooper's true intention was not to enforce this regulation (either by issuing a citation to Grohs, or by warning Grohs that his vehicle was not in compliance). Rather, Grohs suggests that the trooper's true intention was to investigate whether Grohs might be driving while under the influence—and that, because the officer had no reasonable suspicion to justify a DUI stop, the officer used the equipment violation as an alternate justification for making contact with Grohs. Grohs argues that we should declare this type of police conduct unconstitutional.

Grohs's argument is answered by our recent decision in *Nease v. State*. In *Nease*, the police stopped the defendant's vehicle because it had a non-functioning rear brake light.[8] Nease claimed that the officer's decision to stop his vehicle was not prompted by the non-functioning brake light, but rather because the officer suspected that Nease might be driving while under the influence. Because the officer's action was prompted by this ulterior motive, Nease asked us to declare that the traffic stop was a "pretext" and unlawful.[9]

We concluded that, even under the doctrine of "pretext" stops, the police officer's subjective motivation for making the traffic stop is only one part of the defendant's required proof:

As Professor LaFave explains in his work on search and seizure, the fact that a police officer may have an ulterior motive for enforcing the law is irrelevant for

**4.** AS 28.35.032(p).

**5.** See former AS 12.55.125(e)(1) (pre–2005 version).

**6.** See the pre–2005 versions of AS 12.55.155(a)(1) and AS 12.55.125(e).

**7.** *Blakely,* 542 U.S. at ——, 124 S.Ct. at 2536–38.

**8.** *Nease,* 105 P.3d at 1146–47.

**9.** *Id.,* 105 P.3d at 1146.

Fourth Amendment purposes—even under the doctrine of pretext searches—unless the defendant proves that this ulterior motive prompted the officer to depart from reasonable police practices[.] . . .

We assume for purposes of argument that [the officer] decided to follow Nease's vehicle because he suspected that Nease might be intoxicated. . . . But [the officer's] decision to follow Nease's vehicle did not infringe Nease's Fourth Amendment rights.

. . .

[The officer] observed that Nease had a non-functioning brake light. [He] pulled Nease over to cite him for this traffic offense—a stop that was supported by probable cause. Even if we were to subscribe to the doctrine of "pretext stops," the question would be whether Nease proved that [the officer] departed from reasonable police practice when he decided to stop Nease because of the non-functioning brake light.

*Nease,* 105 P.3d at 1148–49 (quotation from *LaFave* and footnotes omitted).

We noted that "[t]here are numerous factors that a police officer may properly consider when deciding whether to stop a motorist for a traffic violation"—including "the egregiousness or seriousness of the violation (*i.e.,* whether it poses a danger to safety), any earlier police contacts with the motorist or the vehicle, the time of day or night, the weather and road conditions, and the press of other business (or lack thereof)." [10]

We also noted that Nease presented no evidence that the traffic stop in his case was a departure from reasonable police practice:

Nease presented no evidence to suggest that police officers never stop motorists to issue citations for equipment violations, or that they would never do so under the circumstances of this case. Moreover, Nease has never asserted (much less shown) that [the officer] manipulated the traffic stop in this case by abnormally expanding or extending his contact with Nease so that he could investigate Nease's potential drunk driving.

There is no evidence that [the officer's] contact with Nease exceeded the normal duration or scope of a traffic stop for an equipment violation. As far as we can tell from this record, it was immediately apparent to [the officer], when he contacted Nease during the traffic stop, that Nease might be impaired. And because [the officer's] initial contact with Nease gave him reasonable suspicion to believe that Nease was driving while under the influence, [the officer] could properly ask Nease to perform field sobriety tests.

*Nease,* 105 P.3d at 1149–1150.

For these reasons, we concluded that even if we were to adopt the doctrine of pretext stops and searches, Nease failed to establish that his traffic stop was improper under this doctrine. *Id.* at 1150.

We reach the same conclusion in Grohs's case; the superior court properly found that the traffic stop was lawful.

### The Blakely claim

As explained above, Grohs was originally indicted for both felony driving under the influence and felony breath test refusal; however, as part of the plea bargain in this case, the State dismissed the driving under the influence charge, and Grohs was allowed to plead no contest to the single charge of felony breath test refusal.

Under Alaska's pre–2005 presumptive sentencing laws, because Grohs was a second felony offender, he faced a 2–year presumptive term. This 2–year term would have constituted the upper boundary of the judge's sentencing authority unless the State proved one or more aggravating factors under AS 12.55.155(c).

The State proposed one aggravating factor: (c)(21)—that Grohs had a history of repeated instances of criminal conduct "similar in nature to the offense for which [Grohs was] being sentenced". To prove this aggravating factor, the State relied on the fact that Grohs had six prior convictions for driving under the influence (or, as it used to be called, driving while intoxicated).

Conceivably, Grohs might have argued that his prior convictions for driving under

**10.** *Id.* at 1149.

the influence were not "similar in nature" to his present offense of breath test refusal. However, the proper resolution of this legal issue is not clear,[11] and Grohs arguably had a tactical reason for declining to raise this legal issue (because, if Grohs raised this objection, the State might try to withdraw from the plea bargain).

In any case, Grohs never argued that, as a legal matter, his six prior convictions for driving under the influence did not qualify as "similar" criminal conduct for purposes of aggravating factor (c)(21). Instead, Grohs's attorney conceded that, because of his prior convictions, the aggravating factor was proved. Relying on this aggravator, the judge increased Grohs's sentence above the applicable 2–year presumptive term. (Grohs received 2½ years to serve, plus an additional 1½ years suspended.)

■ On appeal, Grohs challenges this aggravator. He does not dispute the fact that he has six prior convictions for driving under the influence (or driving while intoxicated). Nor does Grohs argue that, as a legal matter, his prior DUI convictions were insufficiently "similar" to the offense of breath test refusal. Rather, Grohs takes issue with the *procedures* that the sentencing judge followed when she found aggravator (c)(21).

In *Blakely v. Washington,*[12] the United States Supreme Court held that the Sixth Amendment to the United States Constitution guarantees criminal defendants the right to a jury trial, and the right to demand proof beyond a reasonable doubt, with regard to any disputed factual issue, other than a prior conviction, which increases the defendant's maximum sentence.[13]

Grohs argues that the sentencing judge's finding of aggravator (c)(21) contravened *Blakely* because Grohs never received a jury trial on this aggravating factor, and because the State was never made to prove this aggravating factor beyond a reasonable doubt. (Under the pre–2005 version of AS 12.55.155(f), aggravating factors and mitigating factors were to be proved by clear and convincing evidence.)

We begin our analysis of Grohs's *Blakely* claim by noting that the aggravating factor at issue here, AS 12.55.155(c)(21), is not limited to proof of a defendant's prior convictions. As we said in *Turpin v. State,* "when AS 12.55.155(c)(21) speaks of a defendant's criminal history, this term includes acts that could have been charged as crimes, regardless of whether the defendant was ever prosecuted and convicted for those acts." [14] Thus, in Grohs's case, the State theoretically might have attempted to prove this aggravator by offering evidence that Grohs had committed prior uncharged acts of driving under the influence.

But the State did not rely on uncharged criminal conduct in Grohs's case. Instead, the State relied on Grohs's six prior convictions for DUI. And a defendant's prior convictions are exempted from the right to jury trial recognized in *Blakely.*[15] That is, when a defendant's maximum sentence hinges on the defendant's prior convictions, at least when the defendant does not dispute the fact of those prior convictions, a sentencing judge can rely on the prior convictions without submitting them to a jury.

We recently explained that this exception for prior convictions makes sense because

---

**11.** On the one hand, the act of refusing the breath test is obviously distinct from the act of driving under the influence. A defendant can be guilty of DUI and yet not guilty of breath test refusal—or vice-versa. On the other hand, the Alaska legislature obviously considers these two offenses to be significantly related. Under AS 28.35.030, when a defendant is charged with driving under the influence and the question is to determine the applicable mandatory minimum sentence or whether, based on the defendant's criminal history, the offense should be charged as a felony, *both* the defendant's prior convictions for DUI *and* the defendant's prior convictions for breath test refusal count equally. *See* AS 28.35.030(b), (n), (t)(4). The same is true

when a defendant is charged with breath test refusal. *See* AS 28.35.032(g), (p), (t)(2).

**12.** 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

**13.** 542 U.S. at ——, 124 S.Ct. at 2536–38.

**14.** *Turpin,* 890 P.2d 1128, 1132 (Alaska App. 1995), citing *Fagan v. State,* 779 P.2d 1258, 1260 (Alaska App.1989).

**15.** *Blakely,* 542 U.S. at ——, 124 S.Ct. at 2536. *And see United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 756, 160 L.Ed.2d 621 (2005).

the fact of a criminal conviction necessarily means that the defendant was offered the right to trial by jury and the right to make the government prove the charge beyond a reasonable doubt:

> For [a] defendant to be convicted of [a] crime ..., one of three things had to happen: either (1) the defendant exercised their right to trial by jury, and the jury found the defendant guilty; or (2) the defendant was offered a jury trial but waived it, choosing instead to be tried by a judge, and the judge found the defendant guilty; or (3) the defendant was offered a jury trial but waived trial altogether, choosing instead to enter a plea of guilty or no contest. Regardless of how the defendant was found guilty, the defendant's right to jury trial and the defendant's right to proof beyond a reasonable doubt were both honored—and thus *Blakely* is satisfied.

*Edmonds v. State,* 118 P.3d 17, 20, Alaska App. Opinion No.1998 (July 29, 2005) .

*Accord: United States v. Orduño–Mireles,* 405 F.3d 960, 961–62 (11th Cir.2005); *United States v. Johns,* 336 F.Supp.2d 411, 422 (M.D.Pa.2004); *State v. Chiappetta,* 210 Ariz. 40, 107 P.3d 366, 374 (App.2005); *López v. People,* 113 P.3d 713, 730–31 (Colo.2005); *State v. Lowery,* 160 Ohio App.3d 138, 826 N.E.2d 340, 352 (2005); *State v. Pérez,* 196 Or.App. 364, 102 P.3d 705, 708–710 (2004); *State v. Hughes,* 154 Wash.2d 118, 110 P.3d 192, 201 (2005).

We accordingly hold that, consistent with *Blakely,* a sentencing judge under Alaska's pre–2005 presumptive sentencing laws could properly rely on a defendant's prior convictions as a basis for finding aggravator (c)(21)—at least when the defendant did not dispute the fact of those convictions, and when the State relied simply on the convictions themselves and the legal elements of those crimes, rather than attempting to introduce evidence of the particular facts underlying the prior convictions.[16]

For these reasons, there was no *Blakely* error at Grohs's sentencing.

*Conclusion*

The judgement of the superior court is AFFIRMED.

---

16. Our resolution of Grohs's case should be compared with the ruling of the United States Supreme Court in *Shepard v. United States,* —— U.S. ——, 125 S.Ct. 1254, 1262, 161 L.Ed.2d 205 (2005) ("While the disputed fact here can be described as a fact *about* a prior conviction, it is too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to [the rule announced in] *Apprendi,* to say that *Almendárez–Torres* [523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998)] clearly authorizes a judge to resolve the dispute." (emphasis added)); and the ruling of the Oregon Court of Appeals in *State v. Pérez,* 196 Or.App. 364, 102 P.3d 705, 709–710 (2004).