**Dennis R. MORGAN, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–9579.

Court of Appeals of Alaska.

July 13, 2007.

---

**24.** *Norman v. Nichiro Gyogyo Kaisha, Ltd.,* 761 P.2d 713, 717 (Alaska 1988).

**25.** *Id.*

**26.** *Id.* at 715.

Zane D. Wilson of Cook, Schuhmann, & Groseclose, Fairbanks, for the Appellant.

Blair M. Christensen, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Late in the evening on September 15, 2005, Dennis R. Morgan pulled out of a restaurant parking lot onto the Richardson Highway without using his turn signal—in apparent violation of 13 AAC 02.215(a).[1] State Trooper Brian Wassmann, who was parked nearby, saw Morgan leave the parking lot without signaling. He pursued Morgan's vehicle and pulled him over.

During Wassmann's contact with Morgan, the trooper observed indications that Morgan might be intoxicated. Morgan admitted that he had consumed two or three beers. Wassmann administered field sobriety tests to Morgan—and, after Morgan failed these tests, Wassmann arrested Morgan for driving under the influence.

Morgan filed a motion seeking to suppress the evidence against him on the basis that Trooper Wassmann had subjected Morgan to a "pretext" stop. The district court held a hearing at which evidence was presented concerning the precise circumstances of Morgan's traffic stop and Trooper Wassmann's enforcement practices concerning traffic violations—in particular, his practices regarding the enforcement of the turn signal regulation.

In addition, Morgan presented the testimony of a paralegal employed by his attorney's law firm. The paralegal testified that she stationed herself for a few hours to watch vehicles leaving the same restaurant parking lot, as well as the parking lot of a nearby grocery. According to the paralegal, only one-quarter of the vehicles leaving the restaurant parking lot (seven vehicles out of twenty-eight) and only two-fifths of the vehicles leaving the grocery parking lot (fourteen out of thirty-six) used their turn signal to indicate their intentions.

However, no law enforcement officers passed by during this time. Thus, the paralegal had no information as to whether these motorists would have been stopped if their failure to signal had been observed by a peace officer.

At the conclusion of the hearing, Magistrate Tracy L. Blais concluded that when Trooper Wassmann made the traffic stop, he had probable cause to believe that Morgan had violated the turn signal regulation.

---

1. This administrative regulation provides: "No person may turn a vehicle or move right or left upon, onto, or off a roadway without giving an appropriate signal...."

(Morgan does not appeal this portion of the magistrate's ruling.)

Magistrate Blais further concluded, using the criteria established by this Court in *Nease v. State*,[2] that Wassmann's decision to stop Morgan's vehicle was a "reasonable police practice"—and that, therefore, Wassmann had not stopped Morgan on a "pretext".

Following the magistrate's ruling, Morgan entered a *Cooksey* plea to the charge of driving under the influence, preserving his right to pursue his "pretext stop" argument on appeal.[3] In his briefs to this Court, Morgan argues that Wassmann's action in this case—his decision to stop Morgan for failing to signal a turn out of a parking lot—was not a reasonable police practice.

Morgan points out that, according to Wassmann's testimony at the evidentiary hearing, Wassmann only rarely stops drivers for failing to signal when leaving a parking lot. Wassmann testified that, unless a trooper has been specifically directed to give priority to traffic enforcement, troopers have "quite a bit of discretion" as to whether to stop a motorist for a traffic violation. Regarding failures to signal a turn when leaving a parking lot, Wassmann conceded that he had made such traffic stops only a dozen times during his thirteen years as a state trooper.

Moreover, Wassmann testified that, on the night when he stopped Morgan, he was "working a special detail [targeting] DUI enforcement". To that end, Wassmann was paying special attention to moving violations. As Wassmann explained,

> Driving is a multi-task[ing activity] ... or divided-attention task[.] [And] alcohol [consumption] impairs that divided-attention task. So if people commit moving violations out there, ... it behooves [law enforcement officers] to enforce the ... traffic [laws] and ... make the stop and see if [the driver is] under the influence.
> ...

> [A]t that hour, [especially], we're looking for moving violations—because [we] know that alcohol impairs people to the point of ... making moving violations.... [T]hat's common knowledge.

Based on this testimony, Morgan argues that it is obvious that Wassmann stopped Morgan's vehicle because he wanted to investigate Morgan for driving under the influence—and that Wassmann would not have bothered to stop Morgan's vehicle "absent [this] improper motivation".

As we pointed out in *Nease v. State*, 105 P.3d at 1148, Alaska law is still undecided on the question of pretext stops. The United States Supreme Court rejected this doctrine in *Whren v. United States*.[4] The Alaska courts have not yet decided whether to follow *Whren* or, instead, follow the decisions of other states that have adopted the "pretext stop" doctrine as a limitation on the authority of police officers to stop vehicles for traffic violations.

We did not have to resolve this issue in *Nease*, and we conclude that we need not resolve this issue in Morgan's case either. Even if we were to adopt a "pretext stop" limitation on traffic stops, that doctrine would not apply to the facts of Morgan's case.

■■■ We reach this conclusion mainly because we disagree with Morgan's contention that DUI enforcement was an "improper motivation" for the stop of Morgan's vehicle.

■■■ As we explained in *Nease*, "the fact that a police officer may have an ulterior motive for enforcing [a particular] law is irrelevant for Fourth Amendment purposes—even under the doctrine of pretext [stops]—unless the defendant proves that this ulterior motive prompted the officer to depart from reasonable police practices".[5]

At the evidentiary hearing, Trooper Wassmann testified that a motorist's commission

---

**2.** 105 P.3d 1145, 1148–1150 (Alaska App.2005).

**3.** *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974).

**4.** 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

**5.** *Nease*, 105 P.3d at 1148 (citing Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* (3rd ed.1996), § 1.4, Vol. 1, pp. 117–18).

of a moving violation is an indicator that the motorist may be intoxicated—because the act of driving requires a motorist to concentrate on several things at once, and the consumption of alcohol reduces the motorist's ability to multi-task. This testimony was unrebutted.

Wassmann was assigned to a DUI enforcement detail on the night in question; that is, he was directed to be on the lookout for potentially intoxicated drivers. At 10:45 p.m., Wassmann observed Morgan's vehicle leaving the parking lot of a restaurant that served alcoholic beverages. Morgan entered the highway without signaling. Given these facts, and given the relationship between a motorist's intoxication and an increased likelihood that the motorist will commit a moving violation, Magistrate Blais properly concluded that Wassmann's decision to stop Morgan's vehicle conformed to reasonable police practices.

Indeed, the State's case here is seemingly stronger than it was in *Nease*—for the traffic violation in *Nease* was not a moving violation, but rather an equipment violation (*i.e.*, a traffic infraction that had no ostensible relationship to the likelihood that the driver was impaired).

The judgement of the district court is AFFIRMED.