Steven L. CHASE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10433.

Court of Appeals of Alaska.

Dec. 3, 2010.

Rehearing Denied Dec. 30, 2010.

 

Robert John, Law Office of Robert John, Fairbanks, for the Appellant.

Ann B. Black, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

1. AS 28.15.291(a) and AS 28.05.095(a), respec-

*OPINION*

MANNHEIMER, Judge.

Steven L. Chase was driving in Fairbanks when a state trooper pulled him over because Chase was not wearing his seatbelt. During this traffic stop, the officer discovered that Chase should not have been driving at all; Chase's driver's license was canceled. Chase was subsequently convicted of driving with a canceled driver's license and driving without his seatbelt fastened.[1] He appeals his convictions, arguing three different theories as to why his convictions are unlawful.

Chase first argues that Alaska's seatbelt law is unconstitutional because it is an unjustified infringement of the rights of personal autonomy and liberty guaranteed by Article I, Section 1 of the Alaska Constitution.

Chase next argues that, even if Alaska's seatbelt law is constitutional as a general matter, the police officer in Chase's case engaged in an unreasonable seizure (that is, a seizure in violation of the Fourth Amendment to the federal Constitution and Article I, Section 14 of the Alaska Constitution) when the officer pulled Chase over to give him a citation for failing to wear his seatbelt.

Chase acknowledges that, under AS 12.25.030(a) and AS 12.25.180(b), police officers have the authority to arrest or issue a citation to any person who commits an offense in their presence. Chase nevertheless argues that this authority to arrest or to cite must be exercised "reasonably", because the Constitution forbids unreasonable seizures.

According to Chase, even when a police officer has probable cause to believe that an individual has violated the law, the search-and-seizure provisions of the federal and state constitutions require courts to determine, on a case-by-case basis, whether the police seizure of that individual was "reasonable"—by weighing (1) the government's interest in enforcing that particular law against (2) the individual's interest in liberty and privacy. With regard to his particular case, Chase contends that the police officer's decision to stop him was unreasonable because the government had only a negligible interest

tively.

in enforcing the seatbelt law, while Chase had a significant personal interest in not being detained by the police.

Finally, Chase argues that even if the seatbelt statute is constitutional as a general matter, and even if the traffic stop of Chase's vehicle was reasonable for purposes of the search-and-seizure clause, the police officer's act of stopping Chase was a "pretext" stop, and thus all evidence obtained during that stop must be suppressed.

For the reasons explained here, we conclude that none of Chase's claims has merit, and we therefore affirm his convictions.

*Whether Alaska's seatbelt law infringes the rights of personal liberty, autonomy, and privacy guaranteed by the Alaska Constitution*

■ We first address Chase's argument that the seatbelt law is unconstitutional as a general matter. Chase contends that whatever governmental interest there may be in having people wear seatbelts is outweighed by the rights of personal liberty and autonomy guaranteed by Article I, Section 1 of the Alaska Constitution.

Article I, Section 1 of our state constitution declares that "all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry". In *Breese v. Smith,* 501 P.2d 159, 168–172 (Alaska 1972), the Alaska Supreme Court interpreted this provision as guaranteeing a certain level of personal autonomy, and as creating a sphere of personal activities and choices that are presumptively immune from government interference or regulation.

Chase argues that Article I, Section 1 protects his right to travel without police interference, his right to personal privacy, and his right to be free from unreasonable seizure.

We are not convinced that Article I, Section 1, standing alone, should necessarily be interpreted to protect all three of the interests that Chase has identified (right to travel, right to privacy, and right to be free of unreasonable seizure)—since two of these interests (privacy, and the right to be free from unreasonable seizure) are explicitly covered by other provisions of our state consti-

tution. Article I, Section 22 guarantees a right of privacy, while Article I, Section 14 prohibits unreasonable searches and seizures. But in any event, we acknowledge that Chase has identified three constitutionally protected interests.

Chase contends that a person's decision whether to wear a seatbelt is a personal and private choice akin to a person's choice of hairstyle—a choice that the Alaska Supreme Court declared to be protected under Article I, Section 1 in *Breese v. Smith.* Chase further argues that the government has no significant interest in making people wear seatbelts when they drive (or ride in) motor vehicles. Chase contends that the seatbelt law has not made any discernible improvement in public safety, and he further contends that the Alaska Legislature's main motivation for enacting this law was to make sure that Alaska remained eligible for federal highway funds.

■ However, the record shows that when the legislature first enacted the seatbelt law, the legislature was presented with ample testimony and documentary evidence indicating that the law would increase seatbelt use, would prevent injuries, and would save lives and money. As a general rule, it is not an appellate court's role to strike down legislation simply because one might reasonably argue that the legislation was misguided, or simply because it appears that legislation may not have accomplished all of its intended goals. As this Court explained in *Dancer v. State:*

> We may not concern ourselves with the wisdom of legislation. Our role is much more modest. We evaluate the legislation to determine whether it contravenes any prohibitions in the constitution. If it does not, we must uphold the legislation. Policy arguments advocating changes to constitutional legislation must be addressed to the legislature, not the courts.

715 P.2d 1174, 1176 (Alaska App.1986).

This leaves Chase's argument that, whatever legitimate government interest there might be in having people wear seatbelts, that interest is outweighed by the individual's interest in personal autonomy and privacy.

But the Alaska Supreme Court rejected a similar "personal privacy" argument in *Kingery v. Chapple*, 504 P.2d 831, 835–37 (Alaska 1972), a case in which the supreme court upheld the constitutionality of Department of Public Safety regulations that required motorcycles to have various types of safety equipment, and which required motorcycle riders to wear a helmet.

In rejecting this privacy claim, the supreme court distinguished its earlier decision in *Breese v. Smith* (dealing with the government's attempted regulation of a student's hairstyle choice). The supreme court declared that the challenged motorcycle regulations did not constitute an "invasion of privacy" because those regulations were supported by "compelling state interests in providing for [the] safety of the traveling public". *Kingery*, 504 P.2d at 835 n. 6.

When the seatbelt law was under consideration by the legislature, several highway safety experts told the legislature that a seatbelt law which authorized police officers to stop motorists for not wearing seatbelts was an effective measure for reducing the number of deaths and serious injuries from highway accidents. Chase has failed to offer a persuasive rebuttal to that testimony.

For these reasons, we reject Chase's argument that Alaska's seatbelt law unlawfully infringes the rights of personal liberty, autonomy, and privacy guaranteed by the Alaska Constitution.

*Chase's contention that, even if the seatbelt law is constitutional as a general matter, trial courts are still obliged to determine, on a case-by-case basis, whether a particular traffic stop for an observed seatbelt violation qualifies as "reasonable" for purposes of the search and seizure clauses of the federal and state constitutions*

We next turn to Chase's argument that, even if the seatbelt law is constitutional as a general matter, the search and seizure clauses of the federal and state constitutions still require courts to determine, on a case-by-case basis, whether the enforcement of this law by means of a traffic stop (or a full-blown arrest) constitutes an "unreasonable" seizure under the particular circumstances of an individual defendant's case.

Chase acknowledges that in *Atwater v. City of Lago Vista*, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001), the United States Supreme Court held that the Fourth Amendment allows a police officer to arrest a person, even for a minor offense punishable only by a fine, whenever the officer has probable cause to believe that the offense has been committed. In *Atwater*, the Supreme Court "confirm[ed] ... [that] the standard of probable cause applies to all arrests, without the need to 'balance' the interests and circumstances involved in particular situations." *Id.*, 532 U.S. at 354, 121 S.Ct. at 1557.

Chase asserts that his case is different because he was not *arrested* for the seatbelt violation; rather, he was subjected only to a traffic stop for the seatbelt infraction. (The fact that Chase's driver's license had been canceled was discovered only during this traffic stop.)

In other words, Chase argues that even though the Fourth Amendment allows police officers to *arrest* drivers for violating the seatbelt law, it does not allow officers to engage in the lesser intrusion of conducting a traffic stop to issue the driver a citation for violating the seatbelt law. We reject this nonsensical construction of the Fourth Amendment.

Chase also argues that the *Atwater* decision is distinguishable on its facts, because the Texas seatbelt law at issue in *Atwater* contained an express provision authorizing police officers to arrest any person found violating the seatbelt law. Chase notes that Alaska's seatbelt law does not contain such a provision, and he suggests that, for this reason, *Atwater* does not support the traffic stop in his case.

But Alaska law contains a general provision—AS 12.25.030(a)—that authorizes law enforcement officers to arrest a person without a warrant "for [any] crime committed or attempted in the presence of the [officer]". It is true that this authority to conduct a warrantless arrest is limited by AS 12.25.180(b), which declares that when the person's crime is an "infraction" or a "violation"—*i.e.*, an offense not punishable by imprisonment—the officer must issue a citation

to the offender, in lieu of making an arrest, unless the person fails to provide satisfactory evidence of their identity or unless the person refuses to accept the citation and promise to appear in court. But even so, it is clear that whenever a police officer observes a person breaking the law in their presence, Alaska law authorizes the officer to detain the person—either the temporary detention necessary to issue a citation, or the more substantial detention of a full-blown arrest.

Chase argues in the alternative that, even if his traffic stop was lawful under the Fourth Amendment to the federal Constitution, we should apply a stricter test under the search and seizure provision of the Alaska Constitution—Article I, Section 14. Chase contends that this provision of our state constitution requires courts to engage in a case-by-case analysis of the reasonableness of any police stop under the particular circumstances presented in an individual defendant's case.

In making this argument, Chase relies primarily on the type of analysis conducted by the Alaska Supreme Court in *State v. Miller*, 207 P.3d 541 (Alaska 2009). In *Miller*, the supreme court evaluated the legality of a police stop by applying the rule first announced in *Coleman v. State*, 553 P.2d 40 (Alaska 1976)—the rule that the police are authorized to conduct brief investigative detentions, based on less than probable cause, only when the police have reasonable suspicion that "imminent public danger exists" or that the person being detained had recently "[caused] serious harm" to persons or property. *Coleman*, 553 P.2d at 46.

■ But the *Coleman* line of cases applies only to situations where the police have no probable cause to make an arrest—cases where there is some lesser degree of suspicion, and the question is whether the police were justified in temporarily detaining a suspect or witness to further investigate the matter. The *Coleman* analysis does not apply when the police already have probable cause to make an arrest. *See Joseph v. State*, 145 P.3d 595, 600 (Alaska App.2006) ("If [the police] had lawful justification for arresting Joseph when [they] began to chase

him, this would allow the State to escape the *Coleman* strictures on investigative stops.").

Thus, Chase is wrong when he asserts that the supreme court's decisions in *Miller* or *Coleman* apply to his case. In Chase's case, the police had probable cause: it is undisputed that the officer observed Chase driving without wearing a seatbelt.

■ Chase's fall-back position, articulated clearly for the first time at oral argument, is that even though the *Coleman* analysis was intended to apply only to situations where the police lack probable cause to make an arrest, we should nevertheless interpret the search and seizure clause of the Alaska Constitution to require courts to engage in a *Coleman*-style analysis in *all* cases—including cases where the police have probable cause to make an arrest.

In essence, Chase asks us to interpret Article I, Section 14 of our state constitution as requiring courts to scrutinize every arrest or traffic stop—scrutinize them by weighing the government's interest in enforcing that particular statute or regulation against the defendant's interest in privacy and liberty, and then determining, under the particular circumstances of each individual defendant's case, whether the arrest or traffic stop was "reasonable". Chase argues that, for these purposes, an arrest or a traffic stop is "reasonable" only when, under the circumstances of an individual defendant's case, the public interest in enforcing that particular statute or regulation sufficiently outweighed the defendant's interest in being left alone.

Chase has failed to provide any legal authority to support this proposition—the proposition that the search and seizure clause of the Alaska Constitution was intended to give courts the equitable power to declare an arrest or a traffic stop invalid, even though it was supported by probable cause, whenever a judge believes that the government lacked a sufficient interest in enforcing that particular law under the particular facts of the defendant's case.

Moreover, Chase's argument misapprehends the interplay between the search and seizure provision of the Alaska Constitution and the legislature's authority to define

crimes. It is the legislature's prerogative to prohibit conduct by enacting a criminal statute—such as the seatbelt law—when the legislature believes that this will further the public safety or welfare. The legislature's authority to create criminal offenses is circumscribed by various provisions of the constitution. But if a criminal statute is a valid exercise of legislative power, then the normal rule under Alaska law is that a police officer who observes a person violating the statute is authorized to stop the offender and either make an arrest or issue a citation.

Chase would have the courts invalidate arrests and traffic stops on policy grounds, based on a judge's (or a group of judges') opinion as to whether it was socially worthwhile to enforce that particular law against that particular defendant. We reject this proposed interpretation of Article I, Section 14.

*Whether Chase was subjected to a "pretext stop"*

In his final attack on his convictions, Chase argues that the police officer's stop of Chase's vehicle amounted to a "pretext" stop. In other words, Chase argues that the officer's announced motivation for stopping him—the fact that Chase was not wearing a seatbelt—was merely a subterfuge for detaining Chase in order to investigate other matters.

This Court has discussed the doctrine of "pretext" stops in a series of cases, most recently in *Morgan v. State*, 162 P.3d 636, 638–39 (Alaska App.2007), *Grohs v. State*, 118 P.3d 1080, 1081–82 (Alaska App.2005), and *Nease v. State*, 105 P.3d 1145, 1148–1150 (Alaska App.2005).

The United States Supreme Court rejected this doctrine in *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), and we have not yet decided whether to adopt the doctrine. However, we have clarified that the doctrine does not apply to all instances where a police officer has an ulterior motive for making a traffic stop. Rather, a traffic stop is a "pretext" only if the defendant proves that, because of this ulterior motive, the officer departed from reasonable police practices by making the stop. *Morgan*, 162 P.3d at 638; *Nease*, 105

P.3d at 1148 (citing Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* (3rd ed. 1996), § 1.4, Vol. 1, pp. 117–18).

Although Chase uses the phrase "pretext stop" to describe his claim on appeal, he is not actually talking about the "pretext" stop doctrine that this Court discussed in *Morgan*, *Grohs*, and *Nease*.

The officer who stopped Chase testified that he was on patrol, working overtime as part of a nationwide "click-it-or-ticket" law enforcement campaign—in other words, he was looking specifically for drivers who were not wearing their seatbelts. Thus, the officer had no ulterior motive when he stopped Chase for not wearing a seatbelt. The officer's express motive was to look for drivers who were violating the seatbelt law, and to cite these drivers for this offense.

Chase does not dispute the officer's testimony concerning his patrol duties and his purpose for stopping Chase. Rather, Chase argues that the *legislature's purpose* for enacting the seatbelt law in the first place was to give police officers a "pretext" for stopping citizens for no good reason, with the hope that the officers might then discover evidence of more substantial crimes.

This is not a normal "pretext stop" argument. Chase does not claim that there was something wrong in *his particular case*; Chase does not argue that the officer who stopped him was using the seatbelt violation as a subterfuge to mask the officer's true purpose of investigating Chase for some other crime. Instead, Chase argues that there is an underlying flaw in the seatbelt law itself.

The flaw, according to Chase, is that the seatbelt law lacks any true governmental purpose. Chase argues that the seatbelt law does not promote the public health or safety in any substantial way, and that the legislature's only real purpose in enacting this law was to give law enforcement officers the authority to spuriously stop citizens and investigate them for other crimes.

This is essentially a rewording of the claim that we addressed in the first section of this

opinion—Chase's argument that the public interest supporting the seatbelt law is so negligible that the law can not be justified as a legitimate legislative act, given the rights of autonomy and privacy guaranteed under the Alaska Constitution.

In that first section of our opinion, we concluded that the seatbelt law was supported by a sufficient public interest to justify its enactment and its concomitant limitation of personal autonomy and privacy. Given that conclusion, we reject Chase's argument that the legislature's real purpose in enacting the seatbelt law was to provide the police with a pretext to stop motorists.

*Conclusion*

The judgement of the district court is AFFIRMED.